COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

DAVID CRUZ,                                                     )

                                                                              )             
No.  08-03-00313-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
409th District Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )               
(TC# 20020D05624)

                                                                              )

 

 

O
P I N I O N

 

Appellant David
Cruz appeals his conviction for capital murder. 
Over Appellant=s
not guilty plea, the jury found Appellant guilty of the offense.  He was sentenced to life imprisonment.  We reverse the trial court=s judgment and the case is remanded for
a new trial.

On May 18, 2002,
the body of Mike Mendivil was found near Capistrano Park on a dirt road by a
cotton field in the Lower Valley area of El Paso.  An autopsy revealed that the victim had four
stab wounds, none of which were fatal, but he had died from multiple blunt
force injuries to his chest and abdomen--injuries sustained when he was run
over by an automobile.  That same day,
Mendivil=s damaged
pickup truck was found abandoned at a different park near Henderson and Pendale
Streets.  There was damage to the vehicle=s rear bumper and bloodstains on the
vehicle=s
exterior, interior, and the undercarriage.








The police
obtained an arrest warrant for Appellant. 
After he was arrested, Appellant gave a voluntary statement to the
police.  According to his statement, on
the day of the incident, he went to the La Bamba Bar on Alameda around 6
p.m.  At approximately 10:30 p.m.,
Mendivil, walked up to the bar and stood next to Appellant while ordering a
beer.  Mendivil made sexual advances
towards Appellant, which Appellant rejected. 
Mendivil walked away to the opposite end of the bar.  Appellant=s
friend told him that Mendivil was Aknown
for that.@  Appellant told his friend that he was going
to leave because Mendivil had offended him and he did not feel comfortable
being there.

As Appellant was
walking home, Mendivil drove up in his pickup truck.  Mendivil asked Appellant if he wanted a ride
home.  Mendivil agreed to take Appellant
straight home, but started driving in a different direction than Appellant had
requested.  Mendivil kept driving even
though Appellant had told him to drop him off.








Mendivil drove to
an area by some cotton fields and stopped the truck.  Appellant tried to jump out of the truck, but
could not.  Appellant noticed that
Mendivil had unzipped his pants and was moving towards him.  Mendivil tried to grab his Afront area@
and tried to take off Appellant=s
pants.  Appellant stated that he felt
like crying because he could not get Mendivil off of him.  Appellant told Mendivil to get off of him or
he would hit him, but Mendivil did not stop his attack.  Appellant felt very scared and worried that
he would be killed.  Appellant hit
Mendivil several times, but Mendivil continued to come at him.  Appellant remembered that he had a knife in
his pocket.  Appellant took it out and
stabbed Mendivil twice in the rib area. 
The struggle continued outside and Appellant stabbed Mendivil
again.  Mendivil fell down and Appellant
got into the truck.  As Appellant was
backing out of the area, he noticed that he had hit Mendivil.  Appellant drove forward so as not to hit
Mendivil again and then backed out of the area in reverse.

As Appellant was
driving in reverse, he struck a cement barrier and the truck was stuck
there.  Two guys from a nearby house came
up and offered to help, but were unable to get the truck unstuck.  Their father brought over some ramps and a
jack and they got the truck off the barrier.

Appellant admitted
in his statement that he had taken Mendivil=s
keys, sunglasses, and a souvenir from the truck and that those items were in a
trash bag outside his house.  Appellant
also admitted to taking Mendivil=s
cell phone, but did not know where he had left it.  Appellant stated that he had never talked to
Mendivil before that night, but had seen him around at the La Bamba
Bar.  He only knew the guy=s name was Mike because he recalled
seeing an ID card inside the truck.[1]








At trial, the
State called several witnesses who were in the park area on the night of the
incident.  Javier Lopez testified that he
was visiting with friends that evening when he heard a crash and saw a pickup
truck stuck on a curb.  He and his friend
ATury@
went over to the truck and tried to help dislodge it.  Lopez asked Appellant why there was blood on
his shirt and his arms.  Appellant told
him that he had picked up a girl at a club, had bought some beer, had taken her
to some street in that area, and found out that the girl was actually a
guy.  Appellant told Lopez that he got
mad and started beating up the guy. 
Lopez recalled that Appellant told him he had pulled the guy out of the
truck and started beating him up and then a car came by and picked up the
guy.  Lopez also recalled that Appellant
asked them to go partying with him. 
Eventually, they were able to get the truck unstuck after Tury=s father arrived with a jack and
ramps.  Appellant then thanked them and
left in the truck.

Arturo Casillas,
Jr. testified that he heard the crash and saw the truck hit the curb while it
was driving in reverse.  He and Lopez
went over to help.  He recalled that
Appellant offered them beer from the truck, which they hid behind some bushes
or a tree.  Casillas, Jr.=s father arrived after they had hid the
beer.  The three of them tried to push
the truck while Appellant pressed the gas pedal, but the truck remained
stuck.  Casillas, Jr. recalled that his
father asked Appellant about the blood on his shirt and Appellant said, AI got in a fight with my friend,@ but after his father left to get the
jack and the ramps, Appellant told Casillas, Jr., Ahe
stabbed some--it was a guy because he thought it was a chick and he was
defending HIMSELF because he didn=t
like that stuff and he didn=t
know what to do.@[2]  Appellant told him that after stabbing the
guy, Appellant pushed the guy out of the truck and left.  Appellant also told Casillas, Jr. that the
truck belonged to him and that he had recently bought it.








April Saladin,
another witness in the group of friends, testified that while they were outside
in front of her cousin=s
house, she saw the truck drive by. 
Saladin saw two people in the truck. 
The driver was wearing a dark cap and a checkered shirt.  Saladin later saw the same pickup truck, but
only the driver was in the truck.  When
she saw the truck the second time, the driver was reversing out really fast and
hit a concrete barrier.

Appellant raises
ten issues on appeal, however, we find that Issue Six is dispositive, and will
therefore, address this complaint first. 
In his sixth issue, Appellant asserts that the trial court erred in not
granting a mistrial because the prosecutor=s
alleged comment on the defendant=s
failure to testify during closing argument. 

A defendant has a
state and federal constitutional right not to be a witness against
himself.  See U.S.Const. amend. V; Tex.Const.
art. I, ' 10.  It is well established that the failure of an
accused to testify may not be the subject of comment by the prosecution.  Bustamante v. State, 48 S.W.3d 761,
765 (Tex.Crim.App. 2001).  Such comments
violate the privilege against self-incrimination contained in Article I, ' 10 of the Texas Constitution and the
Fifth Amendment to the United States Constitution and also offend the
provisions of Tex.Code Crim.Proc.Ann.
art. 38.08 (Vernon 1979)(A[T]he
failure of any defendant to . . . testify shall not be taken as a circumstance
against him, nor shall the same be alluded to or commented on by counsel in the
cause.@).








To determine
whether a prosecutor=s
comment was an improper comment on Appellant=s
failure to testify, we must consider whether the language used was manifestly
intended or was of such character that the jury would naturally and necessarily
consider it to be a comment on the failure of the accused to testify.  Bustamante, 48 S.W.3d at 765.  The comment must be viewed from the jury=s standpoint and the implication that
the comment referred to the defendant=s
failure to testify must be clear.  Id.  It is not sufficient that the language might
be construed as an implied or indirect allusion to the accused=s right to remain silent.  Id.; Patrick v. State, 906
S.W.2d 481, 490 (Tex.Crim.App. 1995), cert. denied, 517 U.S. 1106, 116
S.Ct. 1323, 134 L.Ed.2d 475 (1996).

Appellant objected
to the complained-of comments and the trial court sustained the objection.  Appellant then moved for a mistrial and the
trial court denied the motion.  If a trial
court sustains an objection to improper jury argument, the complaining party
must request an instruction to disregard to preserve error on appeal if an
instruction to disregard could have cured the prejudice resulting from the
argument.  McGinn v. State, 961
S.W.2d 161, 165 (Tex.Crim.App.), cert. denied, 525 U.S. 967, 119 S.Ct.
414, 142 L.Ed.2d 336 (1998).  If, on the
other hand, the prejudice arising from an erroneous jury argument was
incurable, a defendant would be required to request a mistrial to preserve
error on appeal because a mistrial would be the appropriate remedy.  Id.; see also Cockrell v. State,
933 S.W.2d 73, 96-97 (Tex.Crim.App. 1996)(concurring, Maloney, J.)(AWhen an objection is made, followed by
a motion for mistrial in the case of argument that is so inflammatory that an
instruction to disregard would be of no value, Rule 52(a) [now Tex.R.App.P.
33.1] has been satisfied.@).  Thus, in determining whether Appellant
preserved error on this issue, we must determine whether the jury argument, if
erroneous, was also incurable.

The following
exchange occurred during the prosecutor=s
closing argument:

[Prosecutor]:    They want to say first that it=s self-defense.  Well, in order to have self-defense, what has
to happen is someone says, >Yeah,
I committed this crime.  I committed this
murder.  I did this and I intended to do
this because I was in fear of my life.=

 








[Defense]:         Your Honor, we object.  That is, number one, a comment on the
Defendant=s right
to remain silent.  Number two, that is
not the law.  You can deny it.  You can say it was an accident and still say
you acted in self-defense, and Counsel knows that=s
the law.  We demand a mistrial.

 

[Court]:            Your objection is sustained. Your
Motion for Mistrial is denied.

 

[Prosecutor]:    That=s
the gist of the self-defense.  I had to
do this because I was in fear of my life. 
Look at it.  It=s in your charge.

 

Appellant asserts that the
prosecutor=s comment
is a blatant example of an improper comment on the defendant=s failure to testify, in that the
prosecutor literally stated that the defendant must testify that he was in fear
of his life.  We agree.

The Court of
Criminal Appeals has held that use of the word AI@ in a prosecutor=s
jury argument may constitute harmful error. 
See Cook v. State, 702 S.W.2d 597, 599 (Tex.Crim.App. 1984); Cherry
v. State, 507 S.W.2d 549, 550 (Tex.Crim.App. 1974).  In Cherry v. State, the prosecutor
argued, A>Now what defenses are available to a
person in a case like this?  Number one,
alibi, I was somewhere else, I was with someone else.=@  Cherry, 507 S.W.2d at 550.  [Emphasis added].  The Cherry Court found that the choice
of the word AI@ contradicted any theory that the
prosecutor was referring to witnesses other than the defendant.  Id. 
Likewise, in Cook v. State, the Court determined the following
comments constituted reversible error: 

I told you first of all there are
several defenses we usually heard.  A.,
would be mistaken identity.  They couldn=t do that because everybody identified
him.  B., using the alibi.  Someone else, because >I
was somewhere else.  I=ve got my alibi, because I
was playing poker with the guys.=  It wasn=t
that.  Again, because all of the evidence
involved.  C., consent.  There was no affirmative consent shown as to
what happened during the attack.  Only
innuendoes and suppositions about what may have happened.  [Emphasis in original].

 

Cook, 702 S.W.2d at 598.








Examining the
comment from the jury=s
standpoint, the Cook Court stated, A[w]hen
the word >I= is used in reference to something the
defendant might have testified to, but did not, it is illogical to think that
the jury is not reminded of the defendant=s
failure to testify.@  Cook, 702 S.W.2d at 599.  We find no meaningful distinction between the
blatant and direct reference to evidence that could only have been supplied by
Appellant in this case and the improper comments that were found deplorable in Cherry
and Cook.  Here, the use of the
word AI@ in the prosecutor=s argument directed the jury=s attention to Appellant=s election not to testify in this case,
in particular, on the issue of self-defense, which was a subject that only
defendant could have testified to in context of the evidence presented by the
State.  The prosecutor=s comment undoubtedly pointed to a lack
of evidence that could only have come from Appellant, and therefore was
improper.  See Swallow v. State,
829 S.W.2d 223, 225 (Tex.Crim.App. 1992); Angel v. State, 627 S.W.2d
424, 426 (Tex.Crim.App. 1982).

Ordinarily, an
instruction to disregard cures an improper comment on a defendant=s failure to testify.  See Long v. State, 823 S.W.2d 259,
269-70 (Tex.Crim.App. 1991), cert. denied, 505 U.S. 1224, 112 S.Ct.
3042, 120 L.Ed.2d 910 (1992).  The
inquiry is whether the argument was extreme, manifestly improper, injected new
and harmful facts into the case, or violated a mandatory statutory provision
and was so inflammatory that an instruction to disregard could not cure its
prejudicial effect.  Id. at
267.  Article 38.08 prohibited the
prosecutor from commenting on Appellant=s
decision not to testify.  See Tex.Code Crim.Proc.Ann. art.
38.08.  We find that the use of the word AI@
left no doubt in the jury=s
mind that the prosecutor was passing judgment on Appellant=s failure to testify and as such was
inflammatory, flagrant, and its prejudicial effect was therefore
incurable.  Thus, the trial court erred
in denying Appellant=s
motion for mistrial.








Harm
Analysis

Having determined
that the State=s
argument constituted an improper comment on Appellant=s
failure to testify, we must conduct a harm analysis under Tex.R.App.P. 44.2.  See Madden v. State, 799 S.W.2d
683, 699-700 (Tex.Crim.App. 1990); Tex.R.App.P.
44.2(a).  We apply a constitutional harm
analysis in situations where the State comments on a defendant=s failure to testify and we must reverse
a judgment of conviction unless we determine beyond a reasonable doubt that the
error did not contribute to the conviction. 
See Tex.R.App.P.
44.2(a); Wimbrey v. State, 106 S.W.3d 190, 192 (Tex.App.--Fort Worth 2003, pet.
ref=d).

In applying this
standard, we do not consider whether there is overwhelming evidence of
guilt.  Harris v. State, 790
S.W.2d 568, 587-88 (Tex.Crim.App. 1989). 
Instead, we focus on the error and whether the error might have
prejudiced the jurors=
decision-making.  Id.  We must examine the source of the error, the
nature of the error, whether or to what extent it was emphasized by the State,
and its probable collateral implications. 
Id. at 587.  Further, we
must also determine whether declaring the error harmless would encourage the
State to commit the error again with impunity.  Id.








Here, the source
of the error was the State and error was constitutional in nature as well as a
statutorily protected right of Appellant. 
The only disputed issue in this case was the intent of Appellant, that
is, his culpable mental state when he hit the victim with the pickup
truck.  This case turned in large part on
the issue of self-defense.  Evidence of
this claim was introduced by the State in the form of Appellant=s voluntary statement, which was taken
shortly after the incident.  There were
no witnesses to the incident--thus, the prosecutor=s
comment may have weighed heavily on the jury=s
decision-making on the issue of self-defense. 
We find that the improper comment probably had collateral implications
beyond mere forceful closing argument.  While
the State did not emphasize the improper comment beyond use of the AI@
pronoun again after the motion for mistrial was denied, we find that in
declaring the error harmless, the State would be encouraged to make such
arguments with impunity.  For these
reasons, we cannot determine beyond a reasonable doubt that the error did not
contribute to Appellant=s
conviction.  Issue Six is sustained.  Finding that Issue Six constitutes reversible
error, we do not reach Appellant=s
remaining issues.

We reverse the
trial court=s
judgment and remand for a new trial.

 

 

 

February
17, 2005

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.

 

(Publish)











[1]
At trial, Appellant stipulated that blood found on his clothing contained
Mendivil=s DNA,
that blood from the driver=s
seat and door of Mendivil=s
truck contained Mendivil=s
DNA, that blood on the steering wheel contained both Appellant=s and Mendivil=s
DNA, and that a cigarette butt found inside an ashtray in the vehicle contained
Appellant=s
DNA.  





[2]
Arturo Casillas, Sr. also testified at the trial.  He stated that when he went to pick up his
son that evening, he saw his son over by a truck that was stuck.  When he asked the driver of the truck about
the bloodstain on his shirt, Arturo, Sr. recalled that the driver said, Ahe got into a fight with his homie.@ 
According to Arturo, Sr., Appellant looked normal and did not appear
nervous when he told him about the fight. 
Appellant told Arturo, Sr. that it was his mother=s
truck.